IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| PRESTON HUGHES III | § | |
| v. | § | CIVIL ACTION NO. 9:12cv162 |
| RICK THALER,. ET AL. | § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT

The Plaintiff Preston Hughes III, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 seeking a stay of execution. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

In his original complaint, Hughes says that he was arrested in September of 1988 and forced to sign statements under duress. He also contends that the authorities forged his signature on a document which he had never signed, to make it look like he had signed it. Hughes contended that he could prove this if he could get the document to a forensic document examiner, but the state authorities won't give the document to him. He stated that "they have succeeded in holding me here and are now trying to have me executed. They are preventing me from proving my innocence. I'm being held illegally." For relief, Hughes asks that the Court order the defendants to give him the document and stop the execution, as well as for reimbursement of costs. Hughes also sought an "emergency order for a preliminary injunction" against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

Although Hughes said that the State had refused to give him the document in question, he went on to assert that he "has now obtained the exculpatory evidence that will prove that the Plaintiff was illegally searched, evidence illegally seized, and thusly [sic] illegally arrested, tried, convicted,

1

and sentenced to death by the State of Texas." He argued that the State will not give him the time or opportunity to have the evidence tested or heard. As a result, Hughes stated that he is seeking an injunction to stop the execution pending the outcome of his Section 1983 lawsuit against Thaler.

After review of the pleadings, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed, observing that federal courts lack jurisdiction to stay executions under 42 U.S.C. §1983. The Magistrate Judge also observed that Hughes' lawsuit directly challenged the validity of his conviction, and such claims must proceed through habeas corpus.

Hughes filed objections to the Magistrate Judge's Report on October 24, 2012. In his objections, Hughes states that in fact, Pat Lykos, the District Attorney of Harris County, Texas, is the proper defendant. He says that on the morning of September 27, 1988, he was approached by a Houston police detective named Gafford who asked him to come to the homicide division to provide a written statement. Hughes says that he "felt he had no choice" but to go with Gafford. This happened around 2:15 a.m.

When he arrived at the homicide division, he was placed in a room to await Gafford's arrival. Gafford showed up and began questioning him, and then told him that a search of his house had occurred in an effort to locate the victim's missing purse. Hughes says that he knew that his house had in fact been searched based on Gafford's description of his knife collection.

Hughes was placed under arrest at 4:30 a.m. and states that he later made statements "under duress." His first statement was typed by Gafford and signed by Hughes around 7:15 a.m. Some time after this, two other detectives, Smith and Ross, arrived and signed a "statement as witness of person in custody" form and then left. Once they left, Gafford asked Hughes to sign a "voluntary consent for search and seizure" form, but Hughes refused. He was told that "a search warrant could be obtained anyway" and that he "might as well make it easy" by signing the consent form, but he continued to refuse. Hughes states that he did sign a voluntary consent to take samples of his blood, urine, and hair, which he did in an effort to clear his name.

In January of 1989, Hughes states that he wrote to the trial judge and explained that he did not sign the form consenting to a search and seizure of his residence. During a pre-trial motions hearing, the assistant district attorney gave Hughes a photocopy of the consent to search form, asking if the signature which appeared on the form belonged to him. Hughes said yes, but that he had never signed this document. Gafford testified in this hearing that Hughes had in fact signed the consent to search form and that no search had taken place prior to obtaining consent.

Nineteen years later, in February of 2008, Hughes filed a motion for discovery of original documents in the state court, arguing that such discovery could show that Gafford or someone else had Xeroxed his signature onto the voluntary consent to search form. He states that "the trial court allowed Plaintiff's motion to be denied under application of law." On April 28, 2008, Hughes filed an application for writ of mandamus in the Texas Court of Criminal Appeals, again arguing that discovery of the original documents would demonstrate that Hughes did not sign the consent form. The Court of Criminal Appeals denied mandamus relief.

Hughes next cites Skinner v. Switzer, 131 S.Ct. 1289 (2011). In that case, a state prisoner, Henry Skinner, facing a death sentence filed a Section 1983 action asserting that the district attorney's refusal to allow him access to biological evidence for purposes of forensic DNA testing violated his right to due process. The record showed that in preparation for trial, the State had tested some physical evidence but left a number of items untested, including knives found on the premises, an axe handle, vaginal swabs, fingernail clippings, and certain hair samples.

Some six years later, the State of Texas enacted Article 64 of the Texas Code of Criminal Procedure, allowing prisoners to gain post-conviction DNA testing in limited circumstances. Skinner twice moved in state court for DNA testing of the untested items, but both of these motions were denied; the Texas Court of Criminal Appeals held first that Skinner had not shown that he would not have been convicted had exculpatory results been obtained, and in his second motion, the Court of Criminal Appeals held that Skinner had not shown that the evidence was not previously tested through no fault on his part.

3

Skinner then sought Section 1983 relief in federal district court, asserting that the State of Texas was violating his Fourteenth Amendment right to due process by refusing to provide for the DNA testing he requested. The district court held that post-conviction requests for DNA testing are cognizable only in habeas corpus, not under Section 1983, and the Fifth Circuit affirmed.

On certiorari review, the Supreme Court determined that Skinner was not challenging the prosecutor's conduct or the decisions of the Court of Criminal Appeals, but was challenging the post-conviction DNA statute itself, as construed by the Texas courts. Furthermore, the Supreme Court stated that success in Skinner's Section 1983 lawsuit would not necessarily imply the invalidity of his conviction because the DNA test results might prove exculpatory, but they might also prove inconclusive or even incriminating. Thus, the Supreme Court held that Skinner's lawsuit could properly proceed under Section 1983.

In the present case, Hughes says that he is challenging "the statute of writ of mandamus denying Plaintiff access to original documents for forensic examination that, if proven, would show law enforcement and prosecutors engaged in illegal activities to obtain evidence." He states that the "evidence sought for forensic examination *will conclusively show law enforcement committed perjury while testifying, along with the criminal act of forgery to a government document,*" but then immediately contradicts this by saying that having access to these documents would not result in his immediate release because the results "could be inconclusive" after a forensic examination. Finally, Hughes says that the Court should not dismiss his case because of his inability to properly plead his claims; he says that his original complaint was intended to seek the Court's order for release of sought-after documents under the principles of Skinner. For relief, Hughes asks that the Court allow him to amend his complaint to add Lykos, order Lykos to disclose original documents, including the consent to search which he allegedly signed, the consent for collection of biological materials which he did sign, and his signed statement, order Lykos to show cause why a preliminary injunction should not issue, and stay Hughes' scheduled execution pending resolution of the matter.

As can be seen, Hughes' objections substantially alter the nature of his complaint by the raising of new issues and arguments. As a general rule, issues raised for the first time in objections to the Report of the Magistrate Judge are not properly before the District Court. Finley v. Johnson, 243 F.3d 215, 218 n.3 (5th Cir. 2001), *citing* United States v. Armstrong, 951 F.2d 626, 630 (5th Cir. 1992); Cupit v. Whitley, 28 F.3d 532, 535 n.5 (5th Cir. 1994). Hence, those issues which Hughes raises for the first time in his objections are not properly before the district court.

Even if these issues were properly considered, however, Hughes has failed to show any merit to his complaint. In the first place, he now seeks to sue the District Attorney of Harris County, Texas, which is located within the jurisdiction of the Southern District of Texas and not the Eastern District. 28 U.S.C. §1391(b) reads as follows:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial portion of the events or omissions giving rise to the claim occurred, or a substantial portion of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district wherein the action may otherwise be brought.

In this case, the District Attorney for Harris County, Texas resides in the Southern District of Texas, and the events or omissions giving rise to the claim occurred in the Southern District of Texas. Because venue is improper in the Eastern District of Texas, Hughes' lawsuit may be dismissed for that reason. 28 U.S.C. §1406(a).

In addition, Hughes also faces a limitations bar. He states in his objections that at a pre-trial motions hearing in January of 1989, the assistant district attorney showed him a copy of a voluntary consent form, to which Hughes replied that the signature was his but that he had never signed that document. Hughes thus became aware at that time that the State possessed a document purportedly bearing his signature but which he asserts that he did not sign; however, his pleadings indicate that he waited some 19 years before raising this issue in state court.

The Fifth Circuit has held that the district court may raise the statute of limitations *sua sponte* in cases brought under Section 1915. Stanley v. Foster, 464 F.3d 565, 568 (5th Cir. 2006). In

determining the length of the statute of limitations in section 1983 cases, federal courts borrow the forum state's general personal injury limitations period. Owens v. Okure, 109 S.Ct. 573 (1989). The appropriate limitations period in Texas is two years. Burrell v. Newsome, 883 F.2d 416, 419 (5th Cir. 1989).

A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Lavellee v. Listi, 611 F.2d 1129, 1131 (5th Cir. 1981). In this case, Hughes' pleadings show that he became aware of the existence of his claim, by learning about the purportedly forged document, at a pre-trial motions hearing in January of 1989. He offers no explanation for the extraordinary delay in seeking relief on this claim.[1]

The records show that Hughes signed the present complaint on September 26, 2012, more than 23 years after learning of the facts giving rise to the cause of action. He actually first raised this issue in February of 2008, when he filed a motion in state court seeking discovery, following this in April of 2008 with an application for writ of mandamus. While it is true that Skinner was decided in 2011, meaning that any claim specifically founded on the holding in Skinner would arguably have limitations begin to run at that time, the fact nonetheless remains that Hughes had ample opportunity to raise this claim in a timely manner, through a variety of other means, but instead waited some 19 years before he first raised this claim in state court. His claim is barred by the statute of limitations.

Although Hughes says in his objections that he is relying on Skinner, in fact his case is quite different. Skinner challenged the Texas statute providing for post-conviction testing of DNA evidence, but Hughes says that he is challenging "the statute of writ of mandamus." Since he

---

[1] The opinions in Hughes' direct appeals and in his federal habeas petition indicate that his claims concerning the search of his property and the alleged forging of his signature on the consent form were not raised in either of those proceedings. Hughes v. State, 878 S.W.2d 142 (Tex.Crim.App. 1992) (opinion on rehearing); Hughes v. Dretke, 160 Fed.Appx. 431, 2006 WL 15972 (5th Cir., January 4, 2006) (granting certificate of appealability as to three issues); Hughes v. Quarterman, 530 F.3d 336 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 2378 (2009). See also Ex Parte Hughes, slip op. no. AP-76869, 2012 WL 3848404 (Tex.Crim.App., August 29, 2012) (denying relief in subsequent habeas proceeding). None of these cases make any reference to the claim which Hughes raises in the present lawsuit.

provides no conceivable basis for challenging the law under which courts have the power to issue writs of mandamus, Hughes is in effect challenging the decision of the Texas Court of Criminal Appeals in denying his application for writ of mandamus. This is a significant distinction from Skinner, in which the Supreme Court explained that "Skinner does not challenge the adverse CCA decisions themselves; instead, he targets as unconstitutional the Texas statute [i.e. the DNA testing statute] they authoritatively construed." The Supreme Court noted that while a state-court decision is not reviewable by lower federal courts, a statute or rule governing the decision may be challenged in a federal action, and that Skinner's federal case "falls within the latter category." Because Hughes provides no legal basis for challenging the statute or rule authorizing the issuance of writs of mandamus, his complaint, unlike Skinner's, contests the decision of the state court rather than the statute or rule itself. This objection is without merit.

Hughes states that the evidence sought for forensic examination would "conclusively show" that "law enforcement committed perjury while testifying" and that the law enforcement personnel committed "the criminal act of forgery to a government document." In the very next sentence, however, Hughes concedes that the results of forensic testing would be "inconclusive." While these two assertions appear contradictory on their face, the Court need not resolve any such contradiction because Hughes has failed to show that, even if he proved that the search of his home was done without valid consent and thus was not legal, this claim fails to set out any grounds for federal habeas corpus relief. In Stone v. Powell, 428 U.S. 465, 494-95 and n.37 (1976), the Supreme Court held that state prisoners collaterally attacking their convictions under 28 U.S.C. §2254 cannot obtain relief for violations of the Fourth Amendment exclusionary rule when the prisoner was provided a full and fair opportunity to litigate the Fourth Amendment issue in the state courts. U.S. v. Alanis, 88 Fed.Appx. 15, 2004 WL 249594 (5th Cir. 2004), *citing* Stone.

In this case, Hughes acknowledges that he learned during a pre-trial motions hearing that law enforcement officials had allegedly forged his signature onto a consent to search form, which he says made the search of his house unlawful. He has offered nothing to show that he did not have a full

7

and fair opportunity to litigate this issue during his trial and appeal. As a result, even if Hughes were provided with the original document, and he was able to prove that the search of his house was illegal, and he could somehow overcome the bar against successive petitions and the statute of limitations, the purported proof of an unlawful search would not entitle him to federal habeas corpus relief under the doctrine of Stone v. Powell. *See also* Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). Hughes' objection on this point is without merit.

Finally, the Court notes that in his objections, Hughes again asked for an order staying his scheduled execution. As the Magistrate Judge noted, federal district courts lack jurisdiction to stay executions through Section 1983. Moody v. Rodriguez, 164 F.3d 893, 894 (5th Cir. 1999).

In Gomez v. U.S. District Court for the Northern District of California, 503 U.S. 653, 654 (1992), the Supreme Court observed as follows:

> Whether his claim is framed as a habeas petition or as a §1983 action, Harris [the death row inmate] seeks an equitable remedy. Equity must take into consideration the State's strong interest in proceeding with its judgment and Harris' obvious attempt at manipulation. [citations omitted]. This claim could have been brought more than a decade ago. There is no good reason for this abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process. A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief.

Like Harris, Hughes is seeking an equitable remedy. He concedes that he learned of the factual basis of his claim in January of 1989, at a pre-trial motions hearing. He did not raise this claim in his federal habeas corpus petition, meaning that the first time that he has presented this contention in federal court was in the present lawsuit, which he signed on September 26, 2012, over twenty-three years after learning of the facts forming the basis of the claim. After waiting for this extraordinary length of time, Hughes now presents his claim in a lawsuit filed less than two months before his scheduled execution date.[2] This is an "obvious attempt at manipulation" compounded by a clearly

---

[2]Hughes has also filed a lawsuit in the 127th Judicial District Court of Harris County contending that he has been denied due process and subjected to cruel and unusual punishment because the Texas Department of Criminal Justice, Correctional Institutions Division has changed the protocol used for lethal injection from three drugs to a single drug. On October 3, 2012, the Texas Court of Criminal Appeals issued an writ of prohibition to the judge of the 127th District

evident "abusive delay," for which Hughes has shown no good reason. His objections to the Report of the Magistrate Judge are without merit; in the interest of justice, however, the lawsuit should be dismissed without prejudice, to allow Hughes to seek such relief as he believes appropriate in the courts of the State of Texas or in the United States District Court for the Southern District of Texas, which is the district and division in which his claims arose.

The Court has conducted a careful *de novo* review of the pleadings in this case, including the Report of the Magistrate Judge and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 4) is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED without prejudice. This dismissal shall not prevent Hughes from seeking relief through habeas corpus or any other procedurally proper vehicle, in a proper court of territorial jurisdiction. Finally, it is

ORDERED that any and all motions which may be pending in this action, specifically including but not limited to Hughes' request for injunctive relief or a stay of execution, are hereby DENIED.

So **ORDERED** and **SIGNED** this **6** day of **November, 2012.**

_____
Ron Clark, United States District Judge

---

Court, ordering him to "refrain from issuing any order purporting to stay the November 15, 2012 execution of Preston Hughes, III." State ex rel. Abbott v. Sandill, slip op. no. AP-76,889, 2012 WL: 4834107 (Tex.Crim.App. October 3, 2012).